**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 21-20279-CR-MARTINEZ

UNITED STATES OF AMERICA,

v.

RYAN ALEXANDER LAURENT,

    Defendant.
_____/

ORDER GRANTING IN PART MOTION IN LIMINE

THIS MATTER comes before the Court upon the Government's Motion in Limine ("Motion") [DE 123]. The Court has carefully reviewed the Motion, the Defendant's response [DE 128], the Government's reply [DE 135], and the literature submitted by the parties. For the reasons stated below, the Motion will be granted as to the admissibility of the 911 calls and the exclusion of the polygraph evidence, and a ruling on the remaining issues as to the admissibility of Defendant's debriefing statements is deferred until the Court considers Mr. Rubio's testimony and the parties' oral arguments.

    **I.**    **Legal Standard**

Motions in limine "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mowbray v. Carnival Corp.*, No. 08-20937-CIV, 2009 WL 10667070, at *2 (S.D. Fla. April 13, 2009) (quoting *Bowden v. Wal-Mart Stores, Inc.*, No. A. 99-D-880-E, 2001 WL 617521, at *1 (M.D. Ala. Feb. 20, 2001)). Yet, "it is the better practice to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there." *Id.* (internal citations omitted). A court, therefore, "has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds."

*Id.* (quoting *Stewart v. Hooters of Am., Inc.*, No. 8:04-cv-40-T-17, 2007 WL 1752838, at *1 (M.D. Fla. June 18, 2007)). "If evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context." *Mowbray*, 2009 WL 10667070, at *6. The burden of demonstrating that the evidence is inadmissible on any relevant ground rests with the movant.[1] *Id.* (citing *Bowden*, 2001 WL 617521, at *1). "Even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Mowbray*, 2009 WL 10667070, at *6 (quoting *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)).

## II. Analysis

The Government seeks to admit two types of evidence: (1) four recorded 911 calls; and (2) Defendant's statements made during a debrief meeting that took place on November 1, 2021. The Government is also asking the Court to exclude the testimony of Dr. John J. Palmatier, a polygraph examiner who conducted two polygraph examinations on Defendant on October 1, 2021. For the following reasons, the Government's Motion is granted in part and a ruling on the remaining issues on the admissibility of Defendant's debrief statements is deferred.

### A. The 911 Calls

First, the Government seeks to admit four recorded 911 calls on the basis that they are "present sense impressions" or "excited utterances" under Federal Rules of Evidence 803(1) and

---

[1] Although the Government is moving to exclude the polygraph evidence, the Defendant, as the proponent of the expert testimony, bears the burden of proving that polygraph evidence is admissible. *See Chapman v. Procter & Gamble Distributing, LLC*, 766 F.3d 1296, 1304 (11th Cir. 2014) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion."); *United States v. Pavlenko*, 845 F. Supp. 2d 1321, 1325 (S.D. Fla. 2012) (The proponent of the polygraph evidence must "offer evidence to establish the polygraph evidence at issue is reliable.").

803(2). Defendant concedes that the 911 calls are admissible [DE 128]. Accordingly, the Motion is granted on this issue.

### B. The Debrief Statements

Next, the Government seeks to admit Defendant's statements made during a debrief with the Government that took place on November 1, 2021. The same request and arguments were made in Defendant's Motion to Exclude Statements Made in the Course of Plea Negotiations [DE 119], which the Court has ruled on [DE 145]. As explained in the Court's Order denying Defendant's Motion to exclude these statements [DE 145], the Defendant's statements made during the debrief meeting are admissible for impeachment purposes. Additionally, the Government seeks to admit Defendant's statements at any stage of trial, "to rebut any evidence, argument, cross-examination, or representations offered by or on behalf of [Defendant], regardless of whether [he] testifies." [DE 123 at 11–12]. The Court has determined that a hearing is necessary to determine the scope of the Government's right to introduce Defendant's admissions at trial [*See* DE 172]. As such, the Government's Motion is granted in part in accordance with the Court's Order [DE 145], and the Court defers ruling on the remaining issues until it has had the opportunity to hear the parties' arguments and the testimony of Defendant's former counsel.

### C. Polygraph Evidence

Finally, the Government seeks to exclude the expert testimony of Dr. John J. Palmatier, a polygraph expert who performed two polygraph examinations on Defendant. In support, the Government argues that the proposed polygraph evidence does not comply with Federal Rule of Evidence 702, as set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 (1993). Defendant opposes this request for several reasons. First, Defendant contends that a ruling on this issue is premature, as Defendant will only seek to admit Dr. Palmatier's expert testimony to corroborate his own testimony, should he decide to testify at trial. He therefore asks the Court

3

to defer ruling on the matter until it becomes relevant at trial, if he decides to testify. Second, Defendant argues—citing out-of-Circuit authorities—that even if the Court decides to rule on the matter *in limine*, polygraph evidence is admissible under *Daubert* because it is reliable and generally accepted in the professional community.

The Court is cognizant that this issue may ultimately not come up at trial, but in an abundance of caution, it finds it appropriate to rule on such a significant evidentiary issue *in limine* to avoid impeding the flow of trial. While neither side did a proper and thorough *Daubert* analysis in its briefing, the Court has undertaken it on its own. After careful consideration, and for the reasons stated below, the Court finds that the polygraph evidence should be excluded from trial.[2]

---

[2] The case law is clear that neither a preliminary nor a *Daubert* hearing is necessary to decide the matter. A trial court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). As such, even where a trial court conducts a *Daubert* analysis, it is not required to hold a hearing. *See Placida Prof. Ctr., LLC v. Fed. Deposit Ins. Corp.*, 512 F. App'x 938, 953 (11th Cir. 2013). In light of this broad discretion, several courts have opted to rule on the admissibility of polygraph evidence without first conducting a hearing. *See, e.g.*, *Pavlenko*, 845 F. Supp. 2d at 1324–25 (finding that polygraph evidence was inadmissible after conducting only a preliminary hearing and deciding that an evidentiary *Daubert* hearing was not necessary); *United States v. Arthur*, No. 10-20753-CR, 2011 WL 3844090, at *4 (S.D. Fla. Aug. 29, 2011) (finding polygraph evidence inadmissible without conducting *Daubert* hearing); *United States v. Derosa*, No. 10-60194-CR, 2011 WL 742665, at *1 (S.D. Fla. Feb. 23, 2011) (same). Although the Court previously set a preliminary hearing to determine whether a full *Daubert* hearing was necessary, the hearing was continued after the Court held the Pretrial Conference, which was scheduled for the same day as the preliminary hearing. During the Pretrial Conference, however, the Court also heard some argument from the parties on the polygraph issue, as the issue was intertwined with other matters raised at the conference. The Court intended to reset the preliminary hearing, but upon examination of the record, particularly Dr. Palmatier's 83-page report, it has determined that it has sufficient information in the record to rule on the matter without the need for a preliminary or *Daubert* hearing [*See* DE 172].

### *1) Legal Standard on Polygraph Evidence*

"Opinions based on polygraph examinations are seldom, if ever, admissible into evidence."[3] *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1284 (11th Cir. 2010). In this Circuit, polygraph expert testimony is admissible in only two circumstances: (1) "when both parties stipulate in advance as to the circumstances of the test and as to the scope of its admissibility;" or (2) in the trial court's discretion, "when used to impeach or corroborate the testimony of a witness at trial." *United States v. Piccinonna*, 885 F.2d 1529, 1536 (11th Cir. 1989). Defendant is seeking to admit the polygraph evidence to corroborate his own testimony. To admit polygraph evidence to corroborate his testimony, Defendant must satisfy three conditions: (1) he must provide adequate notice to the Government that he will offer polygraph evidence at trial; (2) the Government must be given a "reasonable opportunity to have its own polygraph expert administer

---

[3] "[T]he Supreme Court itself clearly indicated that reasonable judges can disagree over the reliability of polygraph methodology." *United States v. Henderson*, 409 F.3d 1293, 1303 (11th Cir. 2005) (citing *United States v. Scheffer,* 523 U.S. 303, 313 (1998) (majority opinion)). Several district courts in this Circuit have excluded polygraph evidence under Federal Rule of Evidence 702, holding that it fails *Daubert* scrutiny. *See, e.g.*, *Pavlenko*, 845 F. Supp. 2d at 1324–25; *United States v. Londono*, No. 10-20763-1-CR, 2018 WL 706761, at *25 (S.D. Fla. Jan. 10, 2018), *report and recommendation adopted*; *Arthur*, 2011 WL 3844090, at *4; *United States v. Derosa*, No. 60194-CR, 2011 WL 742665, at *1 (S.D. Fla. Feb. 23, 2011); *United States v. Evans*, 469 F. Supp. 2d 1112, 1113 (M.D. Fla. 2006); *Hiscox Dedicated Corp. Member, Ltd. v. Matrix Grp. Ltd., Inc.*, No. 8:09-cv-2465-T-33AEP, 2011 WL 2148088, at *2 (M.D. Fla. May 31, 2011); *Fiveash v. Allstate Ins. Co.*, No. 3:13-cv-18-TCB, 2013 WL 12097615, at *6–7 (N.D. Ga. Aug. 1, 2013). For decades, the Eleventh Circuit has consistently upheld decisions excluding polygraph evidence. *Henderson*, 409 F.3d at 1301–04; *United States v. Gilliard*, 133 F.3d 809, 816 (11th Cir. 1998); *United States v. Piccinonna*, 885 F.2d 1529, 1536 (11th Cir. 1989). Focusing on the significant leeway and discretion afforded to district judges to exclude expert polygraph evidence, the Eleventh Circuit stated in 2005 that it had "yet to hold that exclusion of polygraph evidence at trial was an abuse of discretion under *Piccinonna*." *See Henderson*, 409 F.3d at 1303. In 2010, the Eleventh Circuit reaffirmed this position. *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1284 (11th Cir. 2010) ("We have never held that it is an abuse of discretion to exclude the opinion of a polygraph examiner."). More recently, in 2012 and 2016, the Eleventh Circuit once again affirmed the exclusion of polygraph evidence under Rule 702. *See United States v. Warner*, 638 F. App'x 961, 962–63 (11th Cir. 2016); *United States v. Carroll*, 450 F. App'x 937, 940 (11th Cir. 2012).

a test covering substantially the same questions; and (3) the testimony must satisfy the Federal Rules of Evidence for the admissibility of impeachment or corroboration testimony. *United States v. Henderson*, 409 F.3d 1293, 1301-2 (11th Cir. 2005). Thus, even if admission of the polygraph evidence is proper for corroboration purposes under the first two conditions of *Piccinonna*, it must also meet the reliability and relevance standard pursuant to Federal Rule of Evidence 702, as interpreted by *Daubert*, or under any other Federal Rule of Evidence. *Id.*

In this case, the Government is not challenging that Defendant failed to provide adequate notice of the polygraph examinations, nor that it did not have a reasonable opportunity to administer its own polygraph test. In fact, the record shows that the Government was given this opportunity and chose not to retain its own expert to conduct a polygraph examination on Defendant. In its Motion, the Government only maintains that polygraph evidence should be excluded from trial because it does not pass muster under Rule 702, as interpreted by *Daubert*. Accordingly, the Court will focus its analysis on the *Daubert* inquiry.

### 2) Daubert *Analysis*

Rule 702 permits a witness, qualified as an expert by knowledge, skill, experience, training, or education, to testify in the form of an opinion if the expert's knowledge a) will help the trier of fact to determine a fact in issue; b) is based on sufficient facts or data; c) is the product of reliable principle and methods; and d) those principles and methods have been reliably applied to the facts of the case. Fed. R. Evid. 702. A shorthand way of undertaking the Rule 702 analysis is to ask whether (1) the evidence constitutes scientific knowledge, and (2) it will assist the trier of fact in understanding the evidence or determining a fact at issue. *Daubert*, 509 U.S. at 592. The Court turns to these two considerations.

### a) *Whether polygraph evidence constitutes scientific knowledge*

In assessing the scientific knowledge prong, the Court must consider the theory or technique upon which the testimony is based in light of at least five factors. *Henderson*, 409 F.3d at 1302. These factors include: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error for that theory or technique; (4) the existence and maintenance of standards controlling the theory or technique's operation; and (5) whether the theory or technique has attained general acceptance within the relevant scientific community. *Id.* (citing *Daubert*, 509 U.S. at 593–94); *see also Chapman v. Procter & Gamble Distributing, LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014). These factors are not a definitive checklist or test, and the *Daubert* considerations are applied on a case-by-case basis. *Chapman*, 766 F.3d at 1305 (citing *Daubert*, 509 U.S. at 593; *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005)). Upon consideration of the relevant factors, the parties' arguments, and the literature the parties submitted in support of their positions, the Court finds that the proposed polygraph evidence does not meet the requirements to be admitted as scientific knowledge.[4]

### i. *Whether polygraph theory can and has been tested*

As to the first factor, the Court finds that polygraph theory and the technique used in this case, the control question technique ("CQT"), cannot be adequately tested. Polygraph monitors the examinee's physical responses to questioning. *Henderson*, 409 F.3d at 1302 (citing *United States v. Scheffer*, 523 U.S. 303, 313 (1998) (plurality opinion)). The examiner then "interprets

---

[4] In its motion, the Government does not dispute the second factor, *i.e.*, whether polygraph technique has been subject to peer review. While some courts in this district have found that polygraph techniques were subject to peer review and publication, *see Henderson*, 409 F.3d at 1302, the Court need not reach this factor because it finds that four other factors weigh against admissibility.

the physiological data and opines about whether the subject was lying." *Id.* To date, however, there is "no reliable measure of a polygraph's ability to detect deception accurately." *Pavlenko*, 845 F. Supp. 2d 1321, 1326 (S.D. Fla. 2012) (quoting *United States v. Loaiza-Clavijo*, No. 1:08-CR-356-18, 2012 WL 529981, at *3 (N.D. Ga. Jan. 25, 2012)); *see Scheffer*, 523 U.S. at 312 ("[T]here is simply no way to know in a particular case whether a polygraph examiner's conclusion is accurate."). Indeed, "there is no known physiological response to lying, and thus no scientific theory in that regards." *Loaiza-Clavijo*, 2012 WL 529981, at *3 (citing Committee to Review the Scientific Evidence on the Polygraph, The Polygraph and Lie Detection 13 (National Academy of Sciences, 2003)). As such, there is "no reliable measure of a polygraph's ability to detect deception accurately." *Pavlenko*, 845 F. Supp. 2d at 1326.

Among the various problems with the accuracy of polygraph examination results is the influence of underlying factors, other than truthfulness, that produce observed responses. For instance, "it is unclear the extent to which the results of the [examination] reflect physiological detection as opposed to the influence of extraneous information and resulting examiner confirmation bias on the way the physiological data are collected and interpreted." William G. Iacono & G. Gershon, Ben-Shakhar, *Current Status of Forensic Lie Detection with the Comparison Question Technique: An Update of the 2003 National Academy of Sciences Report on Polygraph Testing*, 43, Law and Human Behavior, No. 1, 86, 91 (2019) (hereinafter "Iacono & Ben-Shakhar"). "Confirmation bias refers to the tendency to unconsciously seek and interpret behavioral data in a way that verifies the first impression or prior expectations about the object in question." *Id.* at 90. The potential effect of the behavioral confirmation bias on polygraph results has been acknowledged even by supporters of the technique. *Id.* at 91.

Because "there is simply no way to know in [this] case whether [Dr. Palmatier's] conclusion is accurate," the first *Daubert* factor weighs in favor of exclusion. *See Scheffer*, 523 U.S. at 312.

### ii. The known or potential rate of error for polygraphs

Next, the Court looks to the third factor: the known or potential error rate for polygraphs. Proponents of polygraphs, including Dr. Palmatier, claim that polygraphs are 89% to 90% accurate. *See* Iacono & Ben-Shakhar, at 87. Indeed, Dr. Palmatier concluded an even lower error rate for Defendant's examination results. He estimated that for the first exam, "the overall probability that Mr. Laurent was truthful when answering the [] questions could be 'roughly' estimated to range between 98.5% to 99.5%." [DE 128-3 at 4]. On the one hand, some studies support Dr. Palmatier's position and conclude that the overall accuracy rate from laboratory studies involving the common CQT polygraph technique is in the range of 90%. *See* Heinz Offe & Susanne Offe, *The Comparison Question Test: Does It Work and If So How?*, Law and Human Behavior, 31, 291, 296 (2007); *Scheffer*, 523 U.S. at 310 (citing S. Abrams, The Complete Polygraph Handbook 190–191 (1989)). On the other hand, many studies have found that the accuracy rate of the CQT polygraph is "little better than could be obtained by the toss of a coin[.]" *Scheffer*, 523 U.S. at 310 (citing Iacono & Lykken, The Scientific Status of Research on Polygraph Techniques: The Case Against Polygraph Tests, in 1 Modern Scientific Evidence, *supra*, § 14–5.3, at 629); *see* Iacono & Ben-Shakhar, at 89.

What is in fact certain is that "there is simply no consensus that polygraph evidence is reliable" and the "scientific community remains extremely polarized about the reliability of polygraph techniques." *Scheffer*, 523 U.S. at 309. Thus, "there is no basis to establish a reliable error rate for polygraph results" obtained by Dr. Palmatier. *Pavlenko*, 845 F. Supp. 2d at 1326;

*Loaiza-Clavijo*, 2012 WL 529981, at *4 (finding that "there is insufficient evidence to establish a reliable error rate or to know the true potential for error in polygraph examinations); *United States v. Evans*, 469 F. Supp. 2d 1112, 1113 (M.D. Fla. 2006) ("[D]ue to their nature, the error rate . . . for polygraph tests is unknown," and "the validity and reliability of polygraph results is uncertain."); *see also Henderson*, 409 F.3d at 1303 (finding that magistrate judge's recommendation to exclude polygraph evidence, adopted by the district court, was not abuse of discretion, where magistrate judge found that "the error rate for polygraph testing 'is not much more reliable than random chance and does not meet the stricter standards of scientific methods required by Rule 702 and *Daubert*.'"). Thus, the third *Daubert* factor has not been satisfied.

> iii. **The existence and maintenance of standards controlling polygraphs**

As to the fourth factor, the Court finds that it has similarly not been met. Defendant maintains that the American Polygraph Association's ("APA") Standards of Practice govern polygraph examinations and that Dr. Palmatier is a member of the APA. Yet, he fails to explain whether Dr. Palmatier has followed APA standards in his examination. A review of the record shows that there is at least one violation of the APA standards, or at the very least, a lack of explanation in the report as to whether APA standards were followed. To begin with, the polygraph report states that the examination was conducted in attorney conference # 3 in the visiting area of the Miami Federal Detention, but it does not describe the surrounding conditions. *See Loaiza*-Clavijo, 2012 WL 529975, at *7. The report also alludes to "irregular testing conditions and outside noise in the visiting center," [ECF No. 128-3 at 3], but it fails to explain what the irregular testing conditions were, and whether the overall testing conditions conformed with APA Standards, despite these conditions. *See Loaiza-Clavijo*, 2012 WL 529975, at *7.

A further review of the report reveals that there is also no clear indication that the APA Standards regarding pretesting and testing practices have been complied with. As to pretest practices, for example, the record does not indicate whether the examiner obtained the informed consent of the examinee prior to testing or gave the examinee an overview of the "polygraph process, including polygraph instrumentation and sensors, use of video/audio recording, issues to be discussed, requirements for cooperation during testing, and the need to report information and results to the referring professionals." APA Standards 5.1–5.2. Moreover, while Dr. Palmatier's *curriculum vitae* notes that he is a member of the APA, it fails to indicate whether he has completed the APA required minimum of thirty (30) continuing education hours in the past two years. *See* APA Standards 1.2.1; *see also Loaiza-Clavijo*, 2012 WL 529975, at *7.

Lastly, the examination was not recorded. Defendant avers that this is not a violation of APA standards because the detention facility where the examination took place did not allow recording, and the most recent version of the standards requires that "[a]n audio and video recording of all phases of the exam [] be maintained [] *consistent with agency policy, regulation or law*[.]" APA Standards 1.7.8 (emphasis added). Even if this were true, absent a recording, the Court is unable to verify whether the examination adhered to APA standards. *Loaiza-Clavijo*, 2012 WL 529975, at *7.

Notwithstanding these standards and whether they were complied with, it should be noted that "maintenance and adherence to [polygraph examination] standards are self-imposed and cannot adequately guarantee the validity of the polygraph result." *Pavlenko*, 845 F. Supp. 2d at 1327 (quoting *Loaiza-Clavijo*, 2012 WL 529981, at *5). An examinee could still adopt deliberate countermeasures to defeat accurate readings, and thus, even with the existence of and adherence

to standards, results may not be accurate. *Id.* For these reasons, the proposed evidence does not meet the fourth factor.

> iv. *Whether polygraphs have attained general acceptance within the scientific community*

The fifth and final factor has also not been satisfied, because polygraphs do not enjoy general acceptance from the scientific community. Defendant contends that various surveys and studies have concluded that polygraphs are generally accepted in the psychological community, and that based on these surveys, courts have concluded the general acceptance of this evidence. Yet, a review of the case law in the federal circuits and the Supreme Court belies Defendant's position. The case law shows "substantial disagreements over the effectiveness of polygraphs" as there is simply no consensus within the scientific community on the reliability of polygraphs. *See Pavlenko*, 845 F. Supp. 2d at 1326 (citing *Loaiza-Clavijo*, 2012 WL 529981, at *5; *Henderson*, 409 F.3d at 1303). The decisions in this Circuit in particular "reflect a contemporary trend that questions the general acceptance of polygraph testing within the scientific community because of continuing questions about its reliability." *Louiza-Clavijo*, 2012 WL 529975, at *7; *Henderson*, 409 F.3d at 1303 ("The Supreme Court itself has clearly indicated that reasonable judges can disagree over the reliability of polygraph methodology."); *Pavlenko*, 845 F. Supp. 2d at 1326 (finding that "polygraph evidence and opinions do not enjoy general acceptance within the scientific community"); *United States v. Arthur*, No. 10-20753-CR, 2011 WL 3844090, at *4 (S.D. Fla. Aug. 29, 2011) (recognizing "the controversy as to the reliability of polygraph evidence in general, which the Supreme Court noted in" *Scheffer*); *Evans*, 469 F. Supp. 2d at 1115 ("polygraph evidence has yet to obtain general acceptance within the scientific community for anything other than use as an investigative tool"). Therefore, the fifth *Daubert* factor is not met.

Because four out of the five *Daubert* factors weigh against admissibility, the Court concludes that Defendant's polygraph evidence does not constitute scientific knowledge.

### b) *Whether the evidence assists the trier of fact*

Even if polygraph evidence constituted scientific knowledge, the Court finds that the evidence would not assist the trier of fact. "Unlike other types of experts who assist the jury in understanding factual matters outside the juror's knowledge, a polygraph expert merely supplies the jury with another opinion, in addition to their own, as to whether the witness is telling the truth." *Pavlenko*, 845 F. Supp. 2d at 1328 (quoting *Loaiza–Clavijo*, 2012 WL 529981, at *6). As Defendant admits, the role of this evidence if it were to be offered is to corroborate Defendant's testimony. Yet, it is the role of the jury to make credibility determinations and permitting Dr. Palmatier to testify as to Defendant's truthfulness invades the providence of the jury.

Moreover, at least one of the questions posed by Dr. Palmatier during his examination addressed an issue that is to be decided by the jury, that is, whether Defendant participated in, helped plan, or provided any of the handguns used in the robbery. If Defendant takes the stand and testifies as to this issue, "the jury [is] capable of determining his credibility without the aid of an expert." *See United States v. Warner*, 638 F. App'x 961, 963 (11th Cir. 2016). Rather than assist the jury, then, not only will Dr. Palmatier's testimony invade the providence of the jury, but it may in fact confuse the jury or shift its focus away from determining guilt or innocence to collateral matters, such as determining the reliability of polygraph examinations. *See Pavlenko*, 845 F. Supp. 2d at 1328 (citing *Loaiza-Clavijo*, 2012 WL 529981, at *6).

For these reasons, the Court finds that Dr. Palmatier's expert testimony on polygraph evidence must be excluded from trial under Federal Rule of Evidence 702.

*3) Federal Rule of Evidence 403*

In the alternative, the Court finds that polygraph evidence is inadmissible under Federal Rule of Evidence 403.[5] Even if the evidence were reliable, which the Court finds it is not, the questions Dr. Palmatier asked Defendant during the examination are not probative of Defendant's guilt or innocence. "[T]he only thing the polygraph examination 'proves' is that the examinee believes [his] own story[]," not that the defendant's statements made outside the jury's presence in this case are true. *Norelus*, 628 F.3d at 1284–85 (quoting *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, n.30 (Hill, J., dissenting)). "The danger of prejudice, confusion of the issues and wasting time" prevents this Court from admitting Dr. Palmatier's testimony. *See Piccinonna*, 885 F.2d at 1541. The Court therefore concludes that the probative value of Defendant's polygraph examination results, which is questionable, is substantially outweighed by the unfair prejudice to the Government, in its potential to mislead or confuse the jury.

For the foregoing reasons, the Government's Motion in *Limine* must be granted on this issue and the polygraph evidence must be excluded under Rules 702 and, in the alternative, 403.[6]

---

[5] The Government did not move to exclude this evidence pursuant to Federal Rule of Evidence 403, and Defendant reserved the right to argue why polygraphs pass muster under Rule 403 should the Court defer to rule on this issue. That said, the Court can, and should, exclude the evidence *sua sponte*, despite the Government's failure to object to the evidence on this ground because it is "so obviously inadmissible and prejudicial[.]" *ML Healthcare Services, LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1305 (11th Cir. 2018).

[6] Additionally, while not raised in the Government's Motion, there appears to be yet another hurdle to the admission of the polygraph evidence. Federal Rule of Evidence 801(d)(1)(B) governs the admission of prior consistent out of court statements during a trial. The rule permits and accords non-hearsay status to a prior statement by a witness that is consistent with the witness's testimony at trial and is offered to corroborate the trial statement and rebut an express or implied charge of recent fabrication or improper influence or motive. *See Doe v. City of Miami Gardens*, 389 F. Supp. 3d 1118, 1124 (S.D. Fla. 2019) (citing *Tome v. United States*, 513 U.S. 150, 157–58 (1995)); *see also United States v. Chang Da Liu*, 538 F.3d 1078, 1086 (9th Cir. 2005). The rule does not allow impermissible bolstering of the veracity of a story. *Tome*, 513 U.S. at 157–58. The threshold inquiry for admissibility under this rule is that the consistent statement need have been made before

Therefore, it is ORDERED that

1. The Government's Motion in Limine [DE 123] is GRANTED IN PART. The 911 calls are deemed admissible, and the polygraph evidence is excluded from trial. The debrief statements are admissible for impeachment purposes, in accordance with the Court's Order Denying Motion to Exclude Debrief Statements [DE 145].

2. The Court DEFERS ruling on the remaining issues as to the admissibility of the statements Defendant made during the debrief on November 1, 2021 until it has had an opportunity to hear Mr. Rubio's testimony and the parties' arguments on the matter.

DONE AND ORDERED in Miami, Florida, this 9th day of May, 2022.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record

---

the attachment of motive to fabricate. *Id.* at 167. Whether a witness had a motive to fabricate the prior statement made is a factual question that the Court needs to decide, and it is subject to reversal only for clear abuse of discretion. *United States v. Prieto*, 232 F.3d 816, 819–21 (11th Cir. 2000). Here, Defendant was charged on May 6, 2021, and the polygraph examination was conducted on October 1, 2021, shortly before the November 1, 2021 debrief meeting with the Government. It thus appears that the polygraph statements were made at a time when the motive to fabricate the statements had already attached. Therefore, even if the polygraph constituted scientific knowledge, it appears that the evidence could not meet the requirements of Rule 801(d)(1)(B).